IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEPHEN B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV447 |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Stephen B. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on July 5, 2019, alleging a disability onset date of August 1, 2017. (Tr. at 213-20, 537.)[1] Plaintiff's application was denied initially (Tr. at 99-102) and upon reconsideration (Tr. at 106-13). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 114-15.) On February 1, 2022, Plaintiff, along with his non-attorney representative, attended the

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #4].

subsequent online video hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 20.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 31), and on September 29, 2022, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

On November 30, 2022, Plaintiff filed a claim in this Court challenging the Commissioner's decision. (See Civil Case No. 1:22CV1026.) After reviewing the parties' arguments, the Court agreed with Plaintiff that further evaluation of Plaintiff's claim was warranted [Doc. #11] and therefore entered a Judgment [Doc. #12] reversing the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) and remanding the case to the Commissioner for further proceedings. This action terminated the original civil case in this Court.

On January 22, 2025, a different ALJ held a second online video hearing, at which both Plaintiff and an impartial vocational expert again testified. (Tr. at 534, 553-85.) Following the hearing, the ALJ ultimately concluded that Plaintiff was not disabled under the Act. (Tr. at 547.) The ALJ's decision became final when the Appeals Council did not review the ALJ's decision within 60 days. Plaintiff then filed the present civil action in this Court.

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir.

1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

## III. DISCUSSION

In the present case, the ALJ found at step one of the sequential analysis that Plaintiff had not engaged in "substantial gainful activity" between his alleged onset date, August 1, 2017, and his date last insured for purposes of DIB, December 31, 2022. (Tr. at 536.) The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 536.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments during the period between August 1, 2017 and December 31, 2022:

> degenerative disc disease/chronic pain; migraines; obesity; fatty liver/diverticulitis; hypertension; [and] obstructive sleep apnea[.]

(Tr. at 536.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 537-40.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, as of his date last insured, he could perform a range of sedentary work with the following, additional limitations:

> [Plaintiff] can occasionally reach overhead with the upper extremities but frequently reach in all other directions. [He] can frequently push, pull, operate hand controls, handle, finger, and feel with the upper extremities. [Plaintiff] can occasionally push, pull, and operate foot controls with lower extremities. [He] can occasionally climb ramps and stairs [but] can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. [He] must avoid concentrated exposure to noise with a maximum rating of 3 (moderate) according to the Selected Characteristics of Occupations (SCO) [and a]void concentrated exposure to vibration. [Plaintiff] must avoid concentrated exposure to pulmonary irritants (i.e., fumes, odors, dust, gases, poor ventilation, etc.). [He] must avoid concentrated exposure to wetness and workplace hazards (i.e., dangerous moving machinery, unprotected heights, etc.)

(Tr. at 540.) At step four of the analysis, the ALJ found that Plaintiff had no past relevant work. (Tr. at 544.) However, the ALJ further determined at step five that, given Plaintiff's

age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 545-46.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act between August 1, 2017 and December 31, 2022. (Tr. at 547.)

Plaintiff now challenges the ALJ's RFC assessment in two respects. First, he contends that the ALJ "erred by failing to perform a function-by-function evaluation of Plaintiff's ability to sustain sitting and by failing to explain why he did not include an accommodation for lower extremity . . . elevation or reclining in the [RFC] assessment." (Pl.'s Br. [Doc. #7] at 1.) Second, he argues that the ALJ "erred by failing to properly evaluate Plaintiff's limitations due to pain and by failing to adequately account for his recurrent migraine headaches in the RFC." (Pl.'s Br. at 1.) Notably, these challenges closely mirror those raised in Plaintiff's prior case before this Court, in which the Court concluded that the ALJ failed to "sufficiently explain the basis for her findings" regarding Plaintiff's pain and other symptoms in the administrative decision. (See Case No. 1:22CV1026; Tr. at 613-25.) The Court therefore remanded Plaintiff's claims for a new hearing, explaining that "the Court cannot attempt to rely on reasoning that the ALJ did not provide." (Tr. at 625.)

In both of the claims now raised by Plaintiff, he argues, as in his prior case, that the ALJ erred in finding Plaintiff's statements regarding the limiting effects of his impairments less than fully consistent with the medical evidence and other evidence of record. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator

evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95–96; see also Hines, 453 F.3d at 564-65; Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 361–62 (4th Cir. 2023) ("The Fourth Circuit has long held that while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity. Indeed, because pain is not readily susceptible of objective proof . . . , the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." (internal citations and quotations omitted)).

In the present case, at the hearing in January 2025, Plaintiff testified that he stopped working as a town maintenance water operator in 2017. The job involved heavy lifting and driving machinery, and Plaintiff explained that, because of his neuropathy and back pain, he "had a hard time getting up and down off of the . . . equipment," and "a few times he actually fell." (Tr. at 558-59.) When asked why he couldn't work, Plaintiff testified that his neuropathy, back pain, and neuralgia cause pain and/or instability in all positions. Plaintiff further testified that sitting upright hurts his lower back, that sitting "for any extended period of time," causes his legs to go numb, and that lying in bed or sitting in a recliner with his feet up were the only positions in which he was not putting any strain on his back or legs. (Tr. at 560-61.) Notably, Plaintiff sat in his recliner with his legs up for the entirety of his hearing. (Tr. at 564-66.) Plaintiff also testified that he has tried "a numerous amount of pain medications, but . . . couldn't find any that helped." (Tr. at 561, 563-64.)

In terms of headaches, Plaintiff reported that his migraines occur "every couple of weeks" on average. (Tr. at 561.) He further explained that his migraines are "usually caused by . . . bright lights, sound, [or] movements" and that they "can last anywhere from a day or two or three days." (Tr. at 562.) Plaintiff testified that he couldn't do much when experiencing a migraine "because [it] affects [his] balance, makes [him] dizzy, and . . . blurs [his] vision." (Tr. at 562.) He testified that when he experiences one of these headaches, he must stay in a dark room, take medications such as Excedrin and ibuprofen, and sleep as much as possible until the headache subsides, which is generally all day. (Tr. at 561, 570-71.) He also reported that, while he was still working, he took frequent, unscheduled breaks and/or missed work due to frequent headaches and ongoing pain symptoms. (Tr. at 566-67.)

The ALJ recounted the above hearing testimony in some detail in his decision. (Tr. at 541.) The ALJ then determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not persuasive of disability based upon the medical and other evidence in this decision." (Tr. at 543.) However, the ALJ's rationale for this decision, particularly with regard to Plaintiff's headaches, is not clearly traceable. The ALJ found only that Plaintiff

> has a history of being treated for migraines, hypertension, and obstructive sleep apnea, but the current record indicates these impairments were not as severe as he alleged, as eviden[ced] by [Plaintiff] tending to be alert and oriented with normal neurological findings, normal cardiovascular findings, cranial nerves intact, normal speech pattern, normal speech content, no sensory loss, no focal motor deficiencies, no ataxia, negative Romberg, and no tremor or pathological reflexes during exams (i.e., normal heart rate, normal heart rhythm, normal heart sounds, no heart murmur, etc.).

(Tr. at 543.) None of these "normal" findings relate in any way to the severity of Plaintiff's migraines. That is, it is not clear how being "alert and oriented with normal neurological findings," or "normal cardiovascular findings," or intact cranial nerves, or normal speech, or lack of ataxia or tremor, or the other normal findings listed during exams would provide any insight into the severity or frequency of Plaintiff's migraines. Thus, the Court cannot follow the ALJ's reasoning from this summary to the conclusion that Plaintiff's migraines were not as intense or limiting as alleged. In the Response Brief, Defendant contends that "[h]ad Plaintiff had limitations from his impairments to the extent that he alleges, he would not have consistently had the physical examinations cited by the ALJ in his decision." (Def.'s Br. [Doc. #12] at 7-8.) However, Defendant also does not explain how Plaintiff's intermittent migraines would have been reflected in the physical examinations, or how the physical examinations summarized above undermine or relate to Plaintiff's migraines. See also, e.g., Patricia M. v.

Bisgnano, 1:24CV691, 2025 WL 2697242 (M.D.N.C. Sept. 22, 2025) ("[A]lthough Plaintiff at times indicated that her migraines and/or medications to alleviate her migraines affected her ability to concentrate, she primarily complained of pain, nausea, vomiting, phonophobia, and photophobia. Thus, findings of normal attention, concentration, orientation, and fund of knowledge had little probative force to detract from Plaintiff's reports of disabling headaches. Moreover, the ALJ entirely failed to explain how normal "cardiopulmonary function," muscle tone/bulk, and gait undermined in any way Plaintiff's consistent complaints of debilitating headaches." (internal citations omitted)); Creel v. O'Malley, No. 5:23CV1742, 2024 WL 4186662, at *11 (D.S.C. Apr. 19, 2024) ("The ALJ also found [the physician's] opinions regarding Plaintiff's postural limitations inconsistent with his treatment records indicating that Plaintiff 'exhibited full (5/5) strength of the upper and lower extremities, intact sensation, a normal gait, and normal reflexes.' However, these physical findings do not necessarily negate the need for limitations because of Plaintiff's migraines." (internal citation omitted)), recommendation adopted sub nom. Angela C. v. O'Malley, 2024 WL 3648190 (D.S.C. Aug. 5, 2024); Robinson v. Colvin, 31 F. Supp. 3d 789, 792–93 (E.D.N.C. 2014) ("The ALJ's reliance on normal strength and reflexes to discount [a physician's] opinion would have no bearing on plaintiff's limitations due to migraine headaches").

Moreover, none of the ALJ's other findings regarding Plaintiff's migraines undermine Plaintiff's accounts of the frequency, severity, or limiting effects of this condition. The ALJ acknowledged that Plaintiff's treatment notes chronicled reports of "throbbing and pounding headaches" accompanied by "nausea, intermittent blurred vision, photophobia, and phonophobia" and that "[d]iagnostic testing [was] consistent with these diagnoses." (Tr. at

542) (citing Tr. at 355-56, 816). The ALJ further recounted that, in August 2019, Plaintiff "reported constant headaches," for which his prescribed medication was ineffective. (Tr. at 542) (citing Tr. at 365). However, in crafting RFC limitations to account for Plaintiff's headaches, the ALJ largely, if not entirely, relied on the findings of the State agency medical consultants, who found at both the initial and reconsideration levels that Plaintiff "must avoid concentrated exposure to noise, vibration, hazards, fumes, odors, dust, gas, and poor ventilation." (Tr. at 544) (citing Tr. at 81, 94). The ALJ determined that these "general environmental limits adequately account for migraines, along with the exertional and postural limits." (Tr. at 544.) However, with the exception of the noise restriction, none of these limitations appear to address Plaintiff's reported migraine symptoms or triggers, which included photophobia, blurred vision, dizziness, and balance issues. (Tr. at 542, 562.)

Crucially, the ALJ also neglected to address the impact of Plaintiff's headaches on his need for absences and/or breaks. Again, Plaintiff testified that he experiences migraines at least every other week, that they last from one to three days, that they are unresponsive to medications, and that he needs to rest for up to a full day in the dark when these headaches occur. In this case, the vocational expert specifically testified that (1) the need for more than one absence per month or (2) the need for additional breaks or off-task behavior exceeding ten percent of the workday, would preclude all work at step five of the sequential analysis. (Tr. at 580-81.) In an unpublished opinion, the Fourth Circuit held that such testimony, when unaddressed by the ALJ, requires remand. See Woody v. Kijakazi, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (holding that "the ALJ erred by not making specific findings regarding how often [the plaintiff] would be absent from work due to the frequency

and severity of her headaches" where the "vocational expert testified a hypothetical person would be precluded from maintaining full time employment if she were absent more than once a month" and the record showed that, "even after receiving treatment that reduced the frequency of her headaches, [the plaintiff] still reported getting headaches about once a week."). Notably, this Court cited this exact issue as a basis for remanding Plaintiff's previous case. (Tr. at 624-25.)[4] Nevertheless, the ALJ on remand again failed to address absenteeism, due to migraines or otherwise, in any meaningful way. Because the ALJ in the present case, as in Woody, failed to assess the impact of Plaintiff's headaches in a manner that permits judicial review, remand is again necessary.

Plaintiff's challenges regarding sitting and lower extremity elevation provide additional bases for remand. As set out above, Plaintiff asserts that the ALJ "erred by failing to perform a function-by-function evaluation of Plaintiff's ability to sustain sitting and by failing to explain why he did not include an accommodation for lower extremity . . . elevation or reclining in the [RFC] assessment." (Pl.'s Br. at 1.) The Court agrees. As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1. "Only after such a function-by-function analysis

---

[4] Specifically, the Court previously found that, "concerning Plaintiff's migraines, the ALJ points to no evidence (1) that Plaintiff's headache symptoms were adequately controlled through treatment or (2) addressing Plaintiff's assertion that, in the course of his previous work, he "had to take a few days off a month" due to migraines. While this degree of absenteeism was tolerated in Plaintiff's previous job, the ALJ determined that Plaintiff could no longer perform this work, and the vocational expert testified that missing even two days per month would preclude other jobs available in the national economy." (Tr. at 624) (internal citations omitted).

may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637.

Here, Plaintiff challenges the ALJ's finding that he remained able to sit without limitation during the time at issue, despite Plaintiff's statements at both the hearing and to his providers that he has problems sitting for long periods due to back pain and leg numbness. In a related argument, Plaintiff alleges a need to elevate his legs, and/or sit in a reclined position to reduce his lower back pain. As the Court noted in its prior decision,

> Plaintiff . . . testified that his neuropathy causes his legs to go numb, that it is very painful to sit for long periods, and that, because of his back injury, he "[has] to elevate [his] legs waist high, almost in a laying position," to alleviate pain. (Tr. at 51.) If he sits with his feet straight down, it hurts his back and causes his legs to go numb, so he has to "sit almost in a laying position with [his] feet straight out." (Tr. at 54.) Plaintiff testified that he spends his time either laying on the sofa or in bed. (Tr. at 54.) Plaintiff's neuropathy is worse in his right leg, and it is more likely than his left to "give out" while he is standing or walking. (Tr. at 56.) In terms of positional changes, Plaintiff testified that he could only sit for "[p]robably 10 minutes, 15 minutes at the most" and that "[it] would be very painful if it [was] longer than that." (Tr. at 60.) He explained that, during the 30-minute video hearing, he had his "legs stretched straight in from of [him] on the couch" and was leaning on the couch arm, "almost in a laying position." (Tr. at 60-61.)

(Tr. at 620.) As noted above, Plaintiff offered nearly identical testimony in the present case, asserting that his neuropathy and back pain cause pain and/or instability in all positions. In particular, he testified that sitting upright hurts his lower back, that sitting "for any extended period of time," causes his legs to go numb, and that lying in bed or sitting in a recliner with his feet up were the only positions in which he was not putting any strain on his back or legs. (Tr. at 560-61.) Accordingly, Plaintiff sat in his recliner with his legs up for the entirety of his second hearing. (Tr. at 564-66.) Plaintiff also testified that he has tried "a numerous amount of pain medications, but . . . couldn't find any that helped." (Tr. at 561, 563-64; see also Tr. at 515 (noting that Plaintiff had failed treatment with Gabapentin, Diclofenac, Ibuprofen,

Flexeril, Cymbalta, Skelaxin, Vicodin, and Lyrica).) His treatment was further limited by difficulty affording treatment. (Tr. at 394-95, 519, 811.)

Notably, the ALJ included degenerative disc disease with chronic pain among Plaintiff's severe impairments at step two of the sequential analysis (Tr. at 536) and acknowledged that objective testing demonstrated "multiple mononeuropathy involving upper limbs and right lower extremity, suggestive of sensory motor axonal and demyelinating peripheral neuropathy involving [the] distal limbs" (Tr. at 541-42), "degenerative disc disease at C4-C5 and C6-C7, disc protrusion at [the] C5-C6 level, degenerative disc disease at L5-S1, and facet disease at L3-S1" (Tr. at 544). The ALJ also recounted Plaintiff's reports of ongoing, severe pain throughout the time period at issue. (See Tr. at 541, 542, 544.) However, the ALJ largely discounted the severity of Plaintiff's pain and underlying impairments by noting that "the physical exams tended to reveal normal findings" including "full strength with normal gait and normal station." (Tr. at 542.) Unfortunately, neither strength nor a normal gait negate the presence of pain or numbness while sitting. See Oakes v. Kijakazi, 70 F.4th 207, 215-16 (4th Cir. 2023) (holding that having the motor strength to walk does not mean that a claimant can do so if it too painful); Watson v. Colvin, No. 5:14-cv-809-FL, 2016 WL 319629, at *6 (E.D.N.C. Jan. 4, 2016) (pain allegations were not negated by findings of full strength where the record also included numerous complaints of pain and nerve testing supported these complaints). Moreover, the ALJ conceded that Plaintiff "continued to report pain and, at times, had lower back pain and muscle aches all over with slow or guarded gait." (Tr. at 542.) The record reflects that in May 2019, Plaintiff displayed a limited range of motion of the mid to lower lumbar spine and knees. (Tr. at 487-88.) In September 2021, Plaintiff specifically

reported that his chronic lower back pain prevented him from sitting for long periods. (Tr. at 520.) Consistent with this report, his provider noted that Plaintiff appeared uncomfortable, grimacing often and shifting his weight in his seat. (Tr. at 522.) He also displayed slow and guarded movements, and his examiner, Nurse Practitioner Jessica Sessoms, agreed that Plaintiff could not sit for long periods of time. (Tr. at 523.) In November 2021, Plaintiff was again noted to have an abnormal gait which was slow and guarded with grimacing. (Tr. at 518.) Nearly all records reflect reports of significant lower back pain.

Despite the Court's admonitions in its prior decision that the ALJ explain the evidentiary basis for accepting some of the limitations alleged by Plaintiff while omitting others, the ALJ in the present case failed to do so. His failure to consider absences, as set out above, provides one example. In addition, the ALJ's failure to address Plaintiff's ability to sit for extended periods is equally problematic. As Plaintiff correctly notes, the RFC in the prior ALJ's decision included a requirement that Plaintiff be able to alternate between sitting and standing every fifteen minutes while remaining on task, in accordance with Plaintiff's testimony that sitting for longer than ten to fifteen minutes causes significantly increased back pain. (Tr. at 618.) Here, despite considering the same evidence and the same time period, the ALJ abandoned limitations on sitting entirely and did not include or even address or discuss any limitations regarding sitting. The omission of the prior sit/stand option is particularly notable in light of the vocational expert's testimony at the January 2025 hearing that a sit/stand limitation alternating every 15 minutes, as included in the prior ALJ's decision, would render Plaintiff disabled. Specifically, regarding the need to shift positions from sitting, the expert testified that

> Most sedentary jobs would allow a brief change of position, but that only if you could maintain a sitting position for a certain amount of time, and the cut off's around 30 minutes. . . . If it's less than 30 minutes, say every 15 minutes, that would be too frequent of a change of position, in my opinion, to be competitively employed in those jobs.

(Tr. at 579.) Thus, a sitting limitation like the sit/stand option that was previously assessed based on the same impairments and medical records for the same time period would have been disabling under the vocational expert's testimony, and the ALJ omitted that sit/stand limitation from the RFC without explanation and, most importantly, without any discussion of Plaintiff's sitting limitations.[5]

Because the ALJ did not address Plaintiff's alleged limitations regarding sitting for longer than fifteen minutes, or his alleged absences due to migraines, or include sufficient analysis as to the impact of these limitations on Plaintiff's ability to work, remand is necessary so that the ALJ can make this determination in the first instance, and can draw a logical bridge to his conclusions.

In the briefing, Plaintiff asks this Court to make a finding of disability, rather than remanding. However,

---

[5] The Court notes that, because the prior decision was remanded by the Court, this is not an instance in which the ALJ at the subsequent hearing was required, under Albright, to consider a prior, final decision by the Commissioner. Under Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999) and Acquiescence Ruling ("AR") 00-1(4), adjudicators in subsequent disability claims must consider any prior, final administrative findings as evidence "and give them 'appropriate weight,' considering such factors as the effects of the passage of time on the continuing applicability of the findings and the extent that evidence not previously considered provides a basis for making a different findings in the subsequent claim." Albright would not apply here, since the prior ALJ's decision was reversed and remanded by this Court. However, the sit/stand option in the prior decision illustrates Plaintiff's potential functional limitations in sitting, and the two decisions cover the same time period and evidence. Even more importantly, the ALJ's failure to address what would be a dispositive sitting limitation reflects the lack of a sufficient function-by-function analysis, even apart from the prior determination.

> [a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989). If the reviewing court has no way of evaluating the basis for the ALJ's decision, then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L.Ed.2d 643 (1985).

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). In the present case, as set out above, the ALJ's failure to fully address Plaintiff's alleged limitations and explain that analysis serves as the very basis for reversal. Accordingly, remand, rather than award of benefits, constitutes the proper remedy so that the ALJ may resolve these issues and include a sufficient explanation to allow for judicial review.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further consideration of Plaintiff's claim. Defendant's Dispositive Brief [Doc. #12] is DENIED, and Plaintiff's Dispositive Brief [Doc. #7] is GRANTED to the extent set out herein.

This, the 25th day of September, 2026.

Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge